UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X
                                                  :
IN RE VIVENDI UNIVERSAL, S.A.                     :
SECURITIES LITIGATION                             :       **OPINION AND ORDER**
------------------------------------------------  :
                                                  :       **02 Civ. 5571 (SAS)**
This document relates to:                         :
                                                  :
09 Civ. 2568                                      :
09 Civ. 2592                                      :
09 Civ. 2603                                      :
09 Civ. 2611                                      :
                                                  :
------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/21/12

## I.    INTRODUCTION

Class action complaints alleging securities fraud against Guillaume

Hannezo — along with defendants Vivendi, S.A. and Jean-Marie Messier — were

first filed on July 18, 2002. On March 26, 2007, an order was entered granting

class certification, but excluding the Individual Plaintiffs ("IPs") — along with all

other putative members of the class of Vivendi investors who were from countries

other than the United States, France, England and the Netherlands — from the

class. One of the IPs promptly filed a Rule 23(f) petition seeking leave to appeal

the March 26, 2007 order's exclusion of him (and the other IPs) from the class.

The petition was denied on May 8, 2007, and over a period of months in late 2007,

the IPs — along with other individual Vivendi shareholders who were excluded

from the class — filed thirty-five complaints against Vivendi, Messier, and

Hannezo.  Hannezo moved to dismiss all but two of the individual actions against

him for failure to serve him in a timely manner.  A March 16, 2009 order granted

Hannezo's motion and dismissed the IPs' actions without prejudice, ruling that the

Rule 4(m) exception for defendants in foreign countries did not apply because

"plaintiffs did not attempt service within the 120 day window."[1]  On March 19 and

March 20, 2009 — days after the March 16 order — the IPs whose actions were

dismissed commenced new actions against Hannezo asserting claims under

Sections 10(b) and 20(a) of the Exchange Act.  Hannezo now moves to dismiss the

IPs' newly commenced actions against him as time-barred.  For the reasons stated

below, Hannezo's motion is denied.

## II.   APPLICABLE LAW

Section 804 of the Sarbanes-Oxley Act of 2002[2] ("SOX") amended 28

U.S.C. § 1658 by lengthening the statute of limitations for private causes of action

alleging securities fraud in violation of Sections 10(b) and 20(a) of the Exchange

Act from the earlier of one year after the discovery of the facts constituting the

---

[1]      March 16, 2009 Order, at 3.

[2]      Pub. L. No. 107-204, 116 Stat. 745, July 30, 2002.

violation or three years after the occurrence of such violation, to the earlier of *two* years after the discovery of the facts constituting the violation or *five* years after the occurrence of such violation.  The effective date of SOX was July 30, 2002.

Under the doctrine established by the Supreme Court in *American Pipe & Construction Co. v. Utah*[3] and its progeny:

> [T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.  Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.[4]

In a series of cases, the Supreme Court held that the filing of a class action tolls the statute of limitations for class members who seek to intervene after the class certification motion is denied,[5] for class members who opt out after the certification motion is granted,[6] and for class members who file individual actions after class certification is denied.[7]

## III.   DISCUSSION

---

[3]     414 U.S. 538 (1974).

[4]     *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).

[5]     *See American Pipe*, 414 U.S. at 552-53.

[6]     *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974).

[7]     *See Crown, Cork & Seal*, 462 U.S. at 353-54.

Hannezo concedes that the July 18, 2002 filing of the class action complaint tolled the statute of limitations for the IPs' claims until at least the March 26, 2007 order excluding the IPs from the class.  Thus, the actions that the IPs commenced in late 2007 were timely as they were filed within the one-year statute of limitations.  Because the IPs did not properly complete — or even attempt — service on Hannezo, those timely actions were dismissed and I must now determine whether the IPs' subsequent March 2009 actions are timely as well. At issue is:  (1) whether the applicable limitations period is the pre-SOX one-year or the post-SOX two-years; (2) whether the Rule 23(f) petition seeking leave to appeal the class certification decision further tolled the statute of limitations; and (3) the date on which the statute of limitations began to run.  If the statute of limitations began running on July 2, 2002 — the date on which Hannezo claims the IPs were on inquiry notice of their claims — and was tolled only from the July 18, 2002 filing of the class action through the March 26, 2007 order, even a two-year limitation period would end on March 10, 2009, nine to ten days before the IPs commenced these actions.  Thus, the IPs claims are time-barred unless:  (1) the two-year limitations period applies, *and either* (2) the Rule 23(f) petition further tolled the statute until May 8, 2007; *or* (3) the statute began to run at some point before July 9, 2002.

4

## A.    The Applicable Statute of Limitations

In amending 28 U.S.C. § 1658 by lengthening the statute of limitations for private causes of action alleging securities fraud in violation of Sections 10(b) and 20(a) of the Exchange Act, section 804(b) of SOX specified that "[t]he limitations period provided by section 1658(b) of title 28, United States Code, as added by this section, shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act."[8]  Under the plain meaning of the statute, the longer two-year statute of limitations period provided by SOX is applicable because the IPs' actions were commenced on March 19, 2009 — after the July 30, 2002 effective date of SOX.

Hannezo argues that section 804(b) does not apply to the IPs' actions because they are not "new proceedings" for purposes of the SOX statute of limitations.[9]  In support of this, Hannezo cites *Adelphia Communications Corp. Securities and Derivative Litigation*,[10] which held that "when determining the applicability of SOX, a duplicative action filed after [SOX's] enactment will be

---

[8]      Pub. L. No. 107-204, 116 Stat. 745, July 30, 2002.

[9]      *See* Reply Memorandum of Law in Further Support of Defendant Guillaume Hannezo's Motion to Dismiss ("Reply Mem.") at 4.

[10]      No. 03 MD 1529, 2005 WL 1679540 (S.D.N.Y. July 18, 2005).

considered a 'de facto amendment,' not a new proceeding."[11]  Yet the complaints at issue are not amendments of a prior complaint, nor are they duplicative of the class action complaint.  An action is duplicative only "if the 'claims, parties, and available relief do not significantly differ between the two actions.'"[12]  Although the class plaintiffs' July 18, 2002 action may involve similar claims and seek similar relief as those filed by the IPs in 2007 and 2009, they do not involve the same parties.  The effect of the March 26, 2007 order was to exclude the IPs from the class, removing them from the existing proceedings and offering them the opportunity to initiate new and non-duplicative proceedings, which they did in late 2007 and again in March, 2009.  The IPs' March 2009 actions are duplicative of their 2007 actions, but that is of no import as the 2007 actions were dismissed without prejudice — indeed, dismissal without prejudice allows plaintiffs to try again, as the IPs did in filing these actions.  Because these actions are new proceedings initiated after the July 30, 2002 effective date of SOX, they are subject to the longer two-year limitations period specified in section 804(b) of SOX.

## B.    The Rule 23(f) Petition

The Second Circuit has yet to address whether *American Pipe* tolling

---

[11]    *Id.* at *3.

[12]    *Id.* (quoting *Northern Assur. Co. of Am. v. Square D Co.*, 201 F.3d 84, 89 (2d Cir. 2000).

ends upon the entry of a class certification decision or upon the subsequent denial

of a petition for permission to appeal pursuant to Rule 23(f).[13]  Several other

Circuit Courts of Appeals have held that tolling ceases upon the denial of class

certification and does not extend through subsequent appeals.[14]  However, most of

those decisions predated the December 1, 1998 enactment of Rule 23(f), which

made it easier for putative class members or defendants to swiftly seek

interlocutory review of class certification decisions.  Eight months before the

enactment of Rule 23(f), the Eleventh Circuit held in *Armstrong v. Martin Marietta*

---

[13]       Both parties cite *In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir.
2007) in support of their positions.  In that decision, the Second Circuit did state
that "[o]nce [claimants] cease to be members of the class — for instance, when
they opt out or when the certification decision excludes them — the limitation
period begins to run again on their claims."  However, *WorldCom* did not involve a
Rule 23(f) petition, nor did it address the post-certification effect of *American Pipe*
tolling.  On the contrary, *WorldCom* addressed claims filed by putative class
members *before* the certification decision, and the Second Circuit held that
*American Pipe* tolling *did* apply to those claims.  As such, *WorldCom* provides
little guidance on whether *American Pipe* tolling continues during the subsequent
Rule 23(f) appeals process.

[14]       *See, e.g.*, *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384,
390 (5th Cir. 1989) (per curiam) (holding that *American Pipe* tolling ceases upon
entry of the district court's order denying class certification, even if the district
court later reconsiders the issue and certifies the class); *Andrews v. Orr*, 851 F.2d
146, 150 (6th Cir. 1988) (holding that " [i]t is the filing of a class action and the
pendency of a motion to certify that suspend the running of a limitations period for
putative class members, and the period for filing begins to run anew when class
certification is denied"); *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir. 1982) (
"[T]olling would have ended . . . when the district court declined to certify the
class.").

*Corp.*[15] that *American Pipe* tolling ceases directly upon the denial of class

certification, but acknowledged that Rule 23(f) might change its ruling:

> If [Rule 23(f)] passes, and if it significantly increases the
> frequency of interlocutory appeals of class certification orders —
> a development which would depend in large part upon how this
> court chooses to exercise the discretion granted to it by the
> proposed rule — then we may revisit the decision taken today, and
> might for instance allow continued tolling of statutes of
> limitations during the pendency of an appeal under the new rule.[16]

Since the enactment of Rule 23(f), federal courts have been split on whether tolling

ceases with the denial of class certification or whether it continues until the denial

of a Rule 23(f) petition for leave to appeal.  The Federal Circuit was not convinced

that Rule 23(f) would prevent the "lengthy delays that would be created if the

limitations period were tolled until the appellate process was complete," and thus

held that *American Pipe* tolling ends upon the trial court's denial of class

certification.[17]  Other courts followed the Eleventh Circuit's reasoning and

determined that Rule 23(f) significantly reduced "the danger resulting from 'a

---

[15]    138 F.3d 1374 (11th Cir. 1998).

[16]    *Id.* at 1389-90 n.35.

[17]    *Stone Container Corp. v. U.S.*, 229 F.3d 1345, 1355 (Fed. Cir. 2000).
*Accord Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002) ("[W]hen
class certification is denied the statute resumes running for the class members.").

8

substantial extension of the tolling period,'"[18] holding that *American Pipe* tolling continues until the denial of a petition for permission to appeal pursuant to Rule 23(f).[19]

In *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, the court focused on a reasonableness standard in determining when *American Pipe* tolling would cease.  Citing *Armstrong*,[20] the court reasoned that the statute of limitations should begin to run again when it is "no longer reasonable for the putative class members to rely on the class action as a means of redressing their individual claims."[21]  Convinced that the enactment of Rule 23(f) created an "expedited appeals process" in which interlocutory appeals were more likely to be granted, the court in *National Asbestos Workers* granted a stay tolling the statute of limitations pending the outcome of the interlocutory appeal.[22]

---

[18]    *Monahan v. City of Wilmington*, No. Civ. A. 00–505, 2004 WL 758342 at *2 (D. Del. Jan. 30, 2004) (quoting *Nelson v. County of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995)).

[19]    *See id.*; *National Asbestos Workers Med. Fund. v. Philip Morris, Inc.*, No. 98 Civ. 1492, 2000 WL 1424931 (E.D.N.Y. Sept. 26, 2000).

[20]    138 F.3d at 180 ("[O]nce the district court enters the order denying class certification, however, reliance on the named plaintiffs' prosecution of the matter ceases to be reasonable.").

[21]    2000 WL 1424931, at *1.

[22]    *Id.* at *2.  Hannezo points out that, unlike the plaintiffs in *National Asbestos Workers*, the IPs neither requested nor received a stay of the action

After considering all of the arguments pro and con, I now hold that *American Pipe* tolling automatically continues through the Rule 23(f) interlocutory appeals process.  This holding will not cause defendants undue hardship, as the Rule 23(f) process is a swift one designed to assist both plaintiffs and defendants in determining how to proceed.  Rule 23(f) thus makes it reasonable for putative class members to continue to rely on the class action as a means of redressing their claims during the short time between the class certification decision and the time needed to determine whether to review that decision.[23]  It follows that *American Pipe* tolling should continue during that brief window of time as well.

### C.   When the Statute Began to Run

The parties dispute whether the statute began to run on July 18, 2002 or July 2, 2002.  Yet even if the statute began to run on the earlier date, the IPs' actions would still be timely — a two-year statute of limitations that began running on July 2, 2002 and was tolled from the June 18, 2002 filing of the class action until the May 8, 2007 denial of the Rule 23(f) petition would end on April 22, 2009, over a month after the IPs commenced these actions on March 19 and March

---

between the March 26, 2007 order excluding them from the class and the May 8, 2007 denial of the Rule 23(f) petition.  While this is true, it is surely not dispositive.

[23]    If review is denied and no class was certified, tolling obviously ends.

10

20, 2009.  Because this issue is not dispositive, I decline to address whether the statute began to run on July 2, 2002 or July 18, 2002.

## IV.   CONCLUSION

For the foregoing reasons, Hannezo's motion is denied.  The Clerk of the Court is directed to close this motion in the following cases:  [Docket No. 1092] in 02 Civ. 5571; [Docket No. 20] in 09 Civ. 2568; [Docket No. 33] in 09 Civ. 2592; [Docket No. 28] in 09 Civ. 2603; [Docket No. 17] in 09 Civ. 2611.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           March 20, 2012

**-Appearances-**

**Counsel for Plaintiffs in 09 Civ. 2568:**

Mark S. Arisohn, Esq.
Eric James Belfi, Esq.
Javier Bleichmar, Esq.
Anthony Joseph Harwood, Esq.
Lawrence Alan Sucharow, Esq.
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
(212) 907-0700

**Counsel for Plaintiffs in 09 Civ. 2592:**

John Anthony Kehoe, Esq.
Stuart L. Berman, Esq.
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706

Jonathan Scott Shapiro, Esq.
Robert Jason Shapiro, Esq.
The Shapiro Firm, LLP
500 Fifth Avenue , 14th Floor
New York, NY 10110
(212) 391-6464

**Counsel for Plaintiffs in 09 Civ. 2603:**

Stuart M. Grant, Esq.
Grant & Eisenhofer, PA
123 Justison Street
Wilmington, DE 19801
(302) 622-7000

Christine M. Mackintosh, Esq.
James Joseph Sabella, Esq.
Grant & Eisenhofer P.A.
485 Lexington Ave.
New York, NY 10017
(646) 722-8500

Diane Toby Zilka, Esq.
Grant & Eisenhofer, PA
Chase Manhattan Centre
1201 North Market Street
Wilmington, DE 19801
(302) 622-7095

Alexander Reus, Esq.
Diaz Reus, LLP
Bank of America Tower
100 S.E. Second Street , Suite 2610
Miami, FL 33131
(786) 235-5000

**Counsel for Plaintiffs in 09 Civ. 2611:**

Nathan D. Finch, Esq.
Motley Rice LLC
1000 Potomac St., Suite 150
Washington, DC 20007
(202) 862-5000

Leslie Margaret Kelleher, Esq.
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-1100
(212) 319-7125

William H. Narwold, Esq.
Michael Elsner, Esq.
Motley Rice LLC

One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1676

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29464
(843) 216-9000

**Counsel for Defendants:**

Martin L. Perschetz, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
(212) 756-2247

14